UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION
CRIMINAL ACTION NO. 3:21-CR-00089-BJB-RSE

**UNITED STATES OF AMERICA**                                                                                   **PLAINTIFF**

**VS.**

**SALVADOR ABDUL JONES**                                                                                        **DEFENDANT**

REPORT AND RECOMMENDATION

Defendant Salvador Abdul Jones, currently under indictment for five counts of bank robbery, has filed an array of motions to suppress evidence. (DN 37; DN 38; DN 39; DN 40). One such motion is a request for a *Franks* hearing. (DN 39). The United States argues that all of Defendant's motions to suppress should be denied, as well as Defendant's request for a *Franks* hearing. (DN 32; DN 33; DN 35). The time for Defendant to file replies in support of his motions has expired.

The District Judge has referred Defendant's Motions to Suppress to the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) to conduct any hearings and prepare a report and recommendation. (DN 41). For the following reasons, the Court recommends Defendant's Motions to Suppress and request for a *Franks* hearing be denied.

I. Background

From April 2, 2021 to April 30, 2021, five robberies occurred at banks in Louisville, Kentucky, and Southern Indiana. The Louisville Metro Police Department believed these robberies were executed by a single suspect based on videos of the suspect entering and exiting the banks and similarities in the commission of the crimes. Following the April 29, 2021 robbery, LMPD

officers developed a suspect vehicle for the robberies – a black 2009-2015 Toyota Venza.

On May 5, 2021, LMPD officers were notified of another robbery occurring at the U.S. Bank at 4951 Brownsboro Road in Louisville. Realizing that the dispatched description of the robbery matched the previous robberies, officers transmitted a description of the black Toyota Venza. Officers from a local neighborhood located a similar vehicle, notified dispatch, and provided the vehicle's license plate information. Though officers did not stop the vehicle, a search of the license plate number revealed the black Toyota Venza was registered to Nikira Gibbs. Officers then ascertained Gibbs' address and located her pacing the street in front of her residence. Gibbs communicated to officers that she was trying to report her vehicle as stolen.

During an interview with Gibbs, law enforcement learned that she lived with Salvador Jones and that the two had been married the previous day. Gibbs also conveyed that Jones was from Tennessee and wanted to return there. Gibbs provided two active telephone numbers for Jones: 502-963-6250 and 615-351-3671.

Using this information, LMPD Detective Benjamin Dean applied for trap and trace warrants on both telephone numbers and search warrants for "subscriber records, transactional records, and related content." (DN 35-1; DN 35-2). Jefferson County Circuit Court Judge McKay Chauvin signed these warrants on May 5, 2021. (*Id.*). Also on May 5, 2021, LMPD officers obtained a search warrant for Jones' residence from Judge Chauvin. (DN 35-5). The next day, law enforcement began receiving pings from one of the numbers, a Sprint phone, tracing the phone to the outskirts of Nashville, Tennessee. With help from the Metropolitan Nashville Police Department, including their obtaining of a separate search warrant for Sprint to provide phone location information, Jones was located, arrested, and charged with multiple counts of robbery. After Jones was arrested, Detective Dean also applied for search warrants for electronic data on

two phones collected from Jones during his arrest. (DN 35-6).

Several weeks later, a federal grand jury indicted Jones on five counts of bank robbery for the five robberies occurring in the Western District of Kentucky. (DN 1). Jones has filed four separate motions for suppression of evidence. In these Motions, Jones seeks suppression of evidence obtained from: (1) the pen registers and trap and trace device warrants; (2) the cell phone warrants; and (3) the warrant for search of his residence. Jones claims that several false statements and material omissions from law enforcement's affidavits/warrants require a *Franks* hearing. Jones also seeks suppression of communications between he and Gibbs, that Gibbs provided to law enforcement, as protected under the marital privilege.

II. Motion to Suppress Evidence Obtained from Search of Jones' Residence (DN 38)

Jones states that the search of his residence was unconstitutional because officers executed the warrant before it was signed by Jefferson Circuit Court Judge McKay Chauvin. He claims officers executed the warrant on his residence on May 5, 2021 but that the warrant produced as part of discovery in this case was not signed by Judge Chauvin until May 6, 2021. The United States responds that the signing judge merely misprinted the May 6, 2021 date on the copy of the warrant produced in discovery. (DN 33). The copy produced in discovery, the United States elaborates, was kept in Detective Dean's case file. (*Id.*). The United States has produced another copy of the search warrant, filed with the Jefferson County Clerk's Office after Judge Chauvin signed it, that demonstrates he signed the search warrant on May 5, 2021. (DN 33-2).

Minor errors are generally not fatal to an otherwise valid search warrant, especially when the error is attributable to the signing judge or the government attorney. *United States v. Winn*, 79 F. Supp. 3d 904, 916 (S.D. Ill. 2015) (collecting cases). This includes when an authorizing judge misdates the search warrant. *See United States v. Smith*, 720 F.3d 1017, 1020 (8th Cir. 2013). In

*Smith*, the Eighth Circuit found that a judge's incorrect date on a search warrant was a "technicality issue" that did not invalidate the search warrant. *Id.* The court in *Smith* considered that the defendant failed to produce any evidence to support his claim that agents executed the warrant before the judge authorized it. *Id.*

Like the error in *Smith*, Judge Chauvin's misdating of the search warrant for Jones' residence is a technicality issue that does not render the warrant facially invalid. For one, it is unclear whether the judge in fact misdated the warrant. The date on Detective Dean's copy of the warrant could be read as "5-6, 2021." (DN 33-1, at PageID # 107). But it also appears that Judge Chauvin may have written a five on top of a six, or vice-versa. Regardless, other portions of the Detective's copy of the warrant support that the judge misprinted the date. The affidavit reflects it was subscribed and sworn in the judge's presence on "the 5th date of May, 2021." (*Id.* at PageID # 104). The copy of the search warrant filed with the Clerk's office likewise confirms that no discrepancy exists as to the date of execution. (DN 33-2). Both the affidavit and search warrant on the Clerk's copy are signed by Judge Chauvin and are clearly dated 5-5, 2021. (*Id.*). Jones fails to provide any evidence supporting his claim that law enforcement executed the search warrant before it was signed. Because Jones makes no other arguments as to the validity of the search warrant for his residence, the Court recommends his Motion to Suppress (DN 38) be denied.[1]

III. Motion to Suppress Evidence of Marital Communications (DN 40)

Jones next requests suppression of any evidence constituting marital communications between he and his wife obtained by law enforcement. Jones states that he and Gibbs were married

---

[1] In a separate motion to suppress, Jones fleetingly mentions the affidavit from the search of his residence. (DN 39, at PageID # 207). He notes that the affidavit for the search of his residence was based on the same affidavit as the other search warrants in this case and that none of the affidavits contained the required particular facts necessary to issue a valid warrant. (*Id.*). Other than this conclusory argument, Jones makes no probable cause arguments specifically geared toward the search of his residence. The Court, therefore, will address Jones' generalized probable cause arguments in Section IV.A. below.

on May 4, 2021, the day before law enforcement interviewed Gibbs regarding her vehicle, which renders their communications privileged under Federal Rule of Evidence 501. The United States clarifies that it does not intend to ask Gibbs to divulge any marital communication during trial. But the United States objects to the broad exclusion of information obtained directly or indirectly from the privileged communications provided to law enforcement. (DN 32). The United States defends it was entitled to rely on Gibbs' confidential marital communications in investigating Jones' criminal activity. (*Id.*). If Gibbs is called as a witness at trial, the United States assures that her testimony would be narrowly tailored to protect the marital communications privilege. (*Id.*).

Federal law recognizes two spousal privileges. First is the "adverse testimony privilege," under which one spouse cannot be forced to testify against the other in a criminal proceeding. *United States v. Irons*, 646 F. Supp. 2d 927, 952 (E.D. Tenn. 2009) (citing *United States v. Porter*, 986 F.2d 1014, 1018 (6th Cir. 1993)). Second is the "confidential communications privilege," which protects communications between spouses made in confidence during the marriage. *Id.* (citing *Porter*, 986 F.2d at 1018). To invoke the latter privilege, the party claiming privilege must establish three conditions: "(1) At the time of communication there must have been a marriage recognized as valid by state law; (2) the privilege applies only to 'utterances or expressions intended by one spouse to convey a message to the other,' and (3) the communication must be made in confidence." *Id.* (quoting *Porter*, 986 F.2d at 1018) (quoting *United States v. Lustig*, 555 F.2d 737, 748 (9th Cir.), *cert. denied*, 434 U.S. 926 (1977) & 434 U.S. 1045 (1978)).

Courts have consistently recognized a caveat to the confidential-communications spousal privilege, however. "[T]he government may use confidential marital communications to investigate crimes, particularly when one spouse has volunteered the information." *United States v. Richter*, No. 1:21-cr-355, 2021 WL 6197899, at * n. 5 (N.D. Ohio Dec. 30, 2021) (collecting

cases); *United States v. Lefkowitz*, 618 F.2d 1313, 1318 (9th Cir. 1980) ("The privilege against adverse spousal testimony is of no use to Lefkowitz because here his wife did not 'testify' against him, but provided information used to support the issuance of a search warrant."); *United States v. Giavasis*, 805 F.2d 1037 (Table), 1986 WL 18086, at *3 (6th Cir. 1986) (per curiam) ("Privileges, of course, only protect against the disclosure of marital confidences in testimony, not cooperation with law enforcement officials.").

The parties seem to agree that communications between Jones and Gibbs during their marriage will be privileged and that Gibbs cannot be forced to testify as to such communications in Jones' criminal proceedings. It bears noting, though, that Jones and Gibbs claim to have married on May 4, 2021, the day before the fifth robbery for which Jones is under indictment. The four additional robberies on which Jones is indicted, allegedly occurring on April 2, 2021, April 8, 2021, April 22, 2021, April 30, 2021, took place prior to their marriage. Though Gibbs may properly refuse to testify to communications with Jones from May 4, 2021 forward, if called as a witness at trial, she will not be able to claim the same privilege for any potential communications before their marriage.

Additionally, neither spousal privilege prohibited Gibbs from volunteering her communications with Jones to law enforcement during their investigation. The spousal privileges apply to testimony, not to disclosure of confidential communications supporting issuance of a search warrant. *See Lefkowitz*, 618 F.2d at 1318. Because the privilege does not extend to the information she provided in cooperation with law enforcement, suppression is not warranted for evidence obtained directly or indirectly from disclosure of her communications. For these reasons, the Court recommends that Jones' Motion to Suppress Evidence of Marital Communications (DN 40) be denied.

<u>III. Motions to Suppress Evidence from Pen Register, Trap and Trace, and Cell Phone Warrants (DN 39; DN 37) and Motion for a *Franks* Hearing (DN 39)</u>

**A. Pen Register, Trap and Trace, and Cell Phone Warrants**

After Gibbs provided law enforcement with two telephone numbers for Jones, Detective Dean made applications for search warrants to Sprint and Verizon, seeking "subscriber records, transactional records, and related content" and orders to obtain pen registers and trap and trace devices pursuant to 18 U.S.C. §§ 3121, 3122, and 3123. (DN 35-1; DN 35-2). Jefferson County Circuit Judge McKay Chauvin signed and authorized these warrants. (*Id.*). The next day, law enforcement learned that the 615-351-3671 number, believed to be serviced by Verizon, had been switched over to T-Mobile/Metro PCS. Detective Dean, accordingly, applied for another pen-register order and search warrant for that number to T-Mobile/Metro PCS, which Judge Chauvin signed. (DN 35-3). Other than naming different telephone service providers, the three applications are substantively identical. Several days after Jones was apprehended, Detective Dean applied for a search warrant for the electronic data on two phones collected from Jones during his arrest. (DN 35-6).

Jones argues that the pen-register and trap-and-trace warrants authorized officers to seize evidence well beyond the information permitted under 18 U.S.C. 3121(c). (DN 37). He points out that Detective Dean's applications for the search warrants misidentify the relevant offense being investigated by referencing an "ongoing criminal investigation of heroin trafficking." This misidentification, according to Jones, renders the pen-register orders and warrants unlawful. Jones further claims the affidavits supporting the cell-phone warrants lack probable cause. (DN 39). These affidavits, in Jones' opinion, included only limited information relating to him and "general conclusory statements about how [he] became a suspect in the various 'business robberies'" mentioned. (*Id.* at PageID # 207).

7

As an initial matter, the pen-register and trap-and-trace orders' misidentification of the crime for which Jones was being investigated does not render the warrants unlawful. The relevant statute, 18 U.S.C. § 3122(b)(1)-(2), provides that an application for an order for a pen register or trap-and-trace device requires only the applicant's identity and "a certification by the applicant that the information likely to be obtained is relevant to an ongoing criminal investigation being conducted by that agency." The statute does not require that the applicant provide the nature of the ongoing criminal investigation or any facts describing such investigation. Additionally, several courts have held that "suppression is not a remedy for a violation of . . . the federal pen-trap statute" because the pen-trap statute provides only for fines and imprisonment for knowing violations. *United States v. Wallace*, 885 F.3d 806, 809 (5th Cir. 2018) (citing *United States v. German*, 486 F.3d 849, 854 (5th Cir. 2007)); *see also United States v. Powell*, 847 F.3d 760 (6th Cir. 2017) ("Nor does the pen-register/trap-and-trace statute itself provide for the suppression of evidence as a remedy for its violation.").

Jones' complaints that the pen register and trap-and-trace orders authorized officers to seize evidence well beyond the information permitted under 18 U.S.C. 3121(c) are also unfounded. (DN 37). Jones believes that the search warrants' authorization for seizure of electronic phone records and cloud storage records was impermissible. (DN 37, at PageID # 195). Jones is correct that 18 U.S.C. § 3121(c) provides that pen registers and trap-and-trace devices shall not include "the contents of any wire or electronic communications." But Detective Dean applied for search warrants seeking these wire and electronic communications, rather than only relying on a pen register/trap-and-trace order.

Unlike pen register or trap-and-trace orders, under the Fourth Amendment to the United States Constitution, "no Warrants shall issue, but upon probable cause, supported by oath or

affirmation, and particularly describing the place to be searched and the persons or things to be seized." U.S. Const. amend. IV. The probable cause inquiry is a "practical, non-technical conception" that deals with the "factual and practical considerations of everyday life." *Illinois v. Gates*, 462 U.S. 213, 231, 103 S.Ct. 2317, 76 L. Ed. 2d 527 (1983). To demonstrate probable cause, "an affidavit must contain facts that indicate a fair probability that evidence of a crime will be located on the premises of the proposed search." *United States v. Abboud*, 438 F.3d 554, 571 (6th Cir. 2006) (quoting *United States v. Frazier*, 423 F.3d 526, 531 (6th Cir. 2005)). This requires law enforcement to establish "a nexus between the place to be searched and the evidence sought." *United States v. McPherson*, 469 F.3d 518, 524 (6th Cir. 2006) (quoting *United States v. Carpenter*, 360 F.3d 591, 594 (6th Cir. 2004)). "Whether this standard is met depends on the totality of the circumstances . . ." *United States v. Elbe*, 774 F.3d 885, 889 (6th Cir. 2014) (citation omitted). Review of the sufficiency of the evidence to support probable cause is limited to the information presented within "the four corners of the affidavit." *Frazier*, 423 F.3d at 531; *see also United States v. Ray*, 577 F. App'x 526, 531 (6th Cir. 2014) (citation omitted).

Detective Dean's search warrants are supported by ample probable cause. The affidavits thoroughly lay out law enforcement's investigation of five robberies occurring at banks in Louisville and one occurring at a bank in Southern Indiana. (DN 35-1; DN 35-2; DN 35-3). They describe how video surveillance and commonalities in the commission of these robberies led them to identifying a suspect vehicle tied to Jones. (*Id.*). After identifying Jones' wife as the owner of the suspect vehicle, law enforcement located her outside of their residence and interviewed her. Jones' wife provided two telephone numbers associated with Jones and identified Jones in several photos taken from the robberies. (*Id.*). Jones' wife further informed law enforcement that Jones called her and stated he was being chased by police and told her to report her vehicle as stolen.

(*Id.*). The affidavits identify Detective Dean's extensive training and work on robbery investigations and his knowledge that robbery suspects frequently change their phone numbers to defeat surveillance. (*Id.*). This information establishes a fair probability that evidence of the robberies would be located on the cell phones associated with Jones and establish a nexus between the electronic cell phone records and the evidence linking Jones to the robberies.

Jones fails to cite any authority that prohibits pen registers and trap-and-trace devices from being included within search warrants authorizing seizure of information that exceeds § 3121's limitations. Nor has the Court located any precedent to support Jones' position. On the contrary, several courts have found that pen-register and trap-and-trace orders accompanied by "search warrants" finding probable cause and supported by sworn affidavits are valid because they demonstrate "a far greater showing than required by the SCA." *See, e.g., United States v. Coleman*, No. 1:18-CR-00484-ELR-JFK, 2020 WL 5229042, at *19 (N.D. Ga. Jan. 14, 2020); *United States v. Fisher*, No. 19-cr-320, 2020 WL 4727429, at *6-7 (D. Minn. Aug. 14, 2020) (noting that traditional SCA applications are not accompanied by sworn affidavits from a law enforcement officer).

Jones also argues that Detective Dean's misidentification of the relevant offense being investigated defeats a finding of probable cause for the search warrants. The Sixth Circuit has held that when a discrepancy exists between a warrant issued and an accompanying affidavit, the reviewing court should examine whether the record indicates any possibility of prejudice arising from such discrepancy. *United States v. Sawyers*, 127 F. App'x 174, 181 (6th Cir. 2005) (citing *United States v. Plunk*, 456 F.2d 1027 (6th Cir. 1972)). Under *Plunk*, reviewing courts should also assess whether any explanation for the discrepancy or error exists beyond typographical error. 456 F.2d at 1028. *Plunk* further advises that if the only explanation is typographical error and no

10

prejudice arises from such error, courts are normally "inclined to apply the 'commonsense and realistic' rule of *United States v. Ventresca*." *Id.* In *Ventresca*, the Supreme Court recognized that affidavits for search warrants must be interpreted by judges in a commonsense and realistic fashion because they are generally drafted by nonlawyers "in the midst and haste of a criminal investigation." 380 U.S. 102, 108 (1965). The Court emphasized that "[a] grudging or negative attitude by reviewing courts towards warrants will tend to discourage police officers from submitting their evidence to a judicial officer before acting." *Id.*

In *Winn v. United States*, the Southern District of Illinois addressed circumstances similar to Jones'. There, the States Attorney's Office listed a different relevant offense on the search warrant than the offense identified in police reports. 79 F. Supp. 3d at 916-17. The court concluded that because probable cause existed to issue the warrant for the actual offense, the fact that the warrant listed an incorrect offense was not fatal to the warrant's validity. *Id.*

Finding *Winn's* reasoning to be sound and applying the commonsense approach outlined in *Ventresca*, the undersigned finds the misidentification of the offense being investigated in the pen-register order does not constitute a Fourth Amendment violation. It is undisputed that the pen-register orders accompanying the search warrants and affidavits incorrectly reference "heroin trafficking" as the relevant offense for the ongoing criminal investigation. (DN 35-1, at PageID # 145). But heroin trafficking is not mentioned anywhere else in the affidavits or search warrants. On the contrary, pages 4-6 of the affidavits focus exclusively on the offense of bank robbery. (*Id.* at PageID # 142-44).

The United States submits a supplemental report filed by Detective Dean on June 22, 2021 that corroborates his mistake was an innocent error. Detective Dean's report indicates that after reviewing the pen-register warrants in the case, he discovered the brief mention of narcotics

11

trafficking. (DN 35-4). The supplemental report explains the incorrect reference to narcotics trafficking was from a previous warrant that was inadvertently left in the affidavits for Jones' warrants. (*Id.*). Detective Dean's inattentive drafting is not tantamount to the type of misconduct against which the Fourth Amendment protects, especially considering that the error was in the pen-register orders, rather than the search warrants or affidavits. This conclusion is reinforced by the fact that despite Detective Dean's error, the search warrants are supported by probable cause.

Based on this analysis, the Court recommends denial of Jones' Motion to Suppress Evidence obtained from pen-register and trap-and-trace devices and cell phone warrants.

### B. *Franks* Hearing

Intertwined with his claims that the search warrants lack probable cause is Jones' request for a *Franks* hearing. He believes a *Franks* hearing is necessary based on several false statements and material omissions in the affidavits for pen registers, trap-and-trace devices, and cell-phone tracking warrants. Jones again highlights Detective Dean's misstatement that Jones was being investigated for "an ongoing criminal investigation of heroin trafficking in connection with possible violations of Trafficking in heroin (along with other illegal narcotic/drugs)." (DN 35-2, at PageID # 158). Another false statement, according to Jones, is that "a search through law enforcement databases for phone number 502-963-6250 shows the phone number comes back to Sprint Corp. and is registered to Salvador Jones." Jones maintains that number matches a prepaid phone with no subscriber information assigned. (*Id.* at PageID # 205). Jones also alleges that the affidavits failed to mention: (1) that the bank was robbed at 11:24 am, and the black Toyota Venza was identified by the Indian Hills Police Department between 11:56 am and 12:10 pm; (2) that Gibbs stated one of the photographs she was shown during a lineup did not look like Jones at all; and (3) that Gibbs advised that she did not pick up Jones following the Fifth Third Bank robbery.

(DN 39, at PageID # 204-05).

In *Franks v. Delaware*, 438 U.S. 154 (1978), the United States Supreme Court established the standard for when a district court is required to conduct an evidentiary hearing regarding the validity of an affidavit supporting a search warrant. To merit a *Franks* hearing, the movant must make "a substantial preliminary showing" that (1) the affiant included a statement, either deliberately false or with reckless disregard for its truth, in the warrant affidavit; (2) without which there could be no finding of probable cause. *United States v. Pirosko*, 787 F.3d 358, 369 (6th Cir.), *cert. denied*, -- U.S. --, 136 S. Ct. 528, 193 L.Ed.2d 408 (2015). Warrant affidavits "carry with them 'a presumption of validity,'" and so the challenger's attack "must be more than conclusory . . . ." *United States v. Stuart*, 507 F.3d 391, 396 (6th Cir. 2007) (quoting *Franks*, 438 U.S. at 171). That is, the movant must point to specific false statements and then "accompany his allegations with an offer of proof," usually in the form of supporting affidavits. *United States v. Bennett*, 905 F.3d 931, 934 (6th Cir. 1990). Moreover, the movant must additionally show that the allegedly false statements "were necessary for the magistrate's determination of probable cause." *United States v. Mastromatteo*, 538 F.3d 535, 545 (6th Cir. 2008). It follows that "if, when material that is the subject of the alleged falsity or reckless disregard is set to one side, there remains sufficient content in the warrant affidavit to support a finding of probable cause, no hearing is required." *Id.* (quoting *Franks*, 438 U.S. at 171-72).

Jones has not met the requisite threshold for a *Franks* hearing. Starting with the affidavit's misidentification of the crime for which Jones was being investigated, Jones has failed to show, through affidavits or otherwise, that such statement was deliberately false or made with reckless disregard for the truth. As detailed above, Detective Dean's supplemental report to the LMPD on June 22, 2021 explains that the incorrect reference to narcotics trafficking was an inadvertent error.

13

Again, because all other information in the affidavits regarding the criminal investigation relates to robberies, the Court deems credible Detective Dean's explanation that this was an honest mistake. Identification of this harmless mistake does not constitute a substantial preliminary showing of knowing or intentional recklessness by Detective Dean.

The same is true for Detective Dean's statement in the affidavit for the Sprint warrant that "a search through law enforcement databases for the phone number of 615-351-3671 shows the phone number comes back to a Sprint corporation cell phone and is registered to Salvador Jones."[2] Jones provides no support, through affidavit or otherwise, for his conclusory argument as to the statement's falsity. Jones' bare allegations do not constitute a substantial preliminary showing.

As for the "material omissions" that Jones identifies, the Sixth Circuit holds "there is a higher bar for obtaining a *Franks* hearing on the basis of an allegedly material omission as opposed to an allegedly false affirmative statement." *United States v. Fowler*, 535 F.3d 408, 415 (6th Cir. 2008) (citing *United States v. Graham*, 275 F.3d 490, 506 (6th Cir. 2001) (add'l citations omitted)). A higher standard is necessary for omissions because of the "'potential for endless rounds of *Franks* hearings' due to potentially 'endless conjecture about investigative leads, fragments of information, or other matter that might, if included, have redounded to the defendant's benefit.'" *Id.* at 425-26 (quoting *United States v. Martin*, 920 F.2d 393, 398 (6th Cir. 1990) (quoting *United States v. Colkley*, 899 F.2d 297, 301 (4th Cir. 1990))). Affiants are not expected to include every piece of information gathered in the course of a criminal investigation in an affidavit for search

---

[2] The Court notes that this statement from the affidavit for search warrant directed at Sprint includes the incorrect phone number. The Affidavit should have stated that "a search through law enforcement databases for the phone number 502-963-6250 shows the phone number comes back to a Sprint Corporation cell phone number and is registered to Salvador Jones." It appears this mistake is the result of copying and pasting information from the Verizon warrant. Jones does not appear to be challenging this typo; in fact, Jones identifies the correct telephone number when mentioning the statement in his motion to suppress. (DN 39, at PageID # 205). Jones challenges that the number came back to a Sprint Corporation and was registered in his name. The Court, therefore, finds the typo is harmless and does not bear on his request for a *Franks* hearing.

warrant. *See Mays v. City of Dayton*, 134 F.3d 809, 815 (6th Cir. 1998) (quoting *Colkley*, 899 F.2d at 302).

Jones cannot meet this high bar as to the three alleged omissions. First, Jones takes issue with the affidavit's failure to mention that the May 5, 2021 robbery occurred at 11:24 am, and the suspect vehicle was identified between 11:56 am and 12:10 pm. Jones makes no effort to prove that Detective Dean engaged in deliberate or reckless disregard of the truth by omitting this information from the affidavit. Although Detective Dean didn't list specific times in his affidavit, he provided information relating to the May 5, 2021 robbery and investigation chronologically. No basis exists for a *Franks* hearing on this alleged omission.

Next, Jones argues that Detective Dean materially omitted Gibbs' interview statement that one of the photographs she was shown did not look like Jones at all. (DN 39, at PageID # 205). Jones further claims that any identification Gibbs made was unduly suggestive since she was shown a single photograph, rather than a photo array or photo pack. (*Id.*). On this point, Detective Dean's affidavit stated that "[w]hen shown photographs taken from several of the business robberies Gibbs identified the suspect seen in the pictures as Salvador Jones." (*See* DN 35-1, at PageID # 156). Even if Gibbs indicated one photograph didn't look like Jones, the affidavit reflects that she identified Jones in "photographs," meaning she was shown multiple pictures from the various robberies. Again, Jones fails to prove this alleged omission was made in deliberate or reckless disregard of the truth.

Lastly, Jones states that although the affidavits reflect Gibbs admitting to picking Jones up in front of the Brown Hotel about a month before her interview, which was corroborated by video evidence from the Fifth Third Bank robbery, Detective Dean failed to include Gibbs' "advising that she did not pick up Jones following the robbery." (DN 39, at PageID # 205). Jones'

15

identification of this alleged omission is vague and possibly contradictory. He doesn't explain which robbery Gibbs was referring to or whether the allegedly omitted statement discredits the affidavit's recollection that Gibbs mentioned picking Jones up in front of the Brown Hotel about a month ago. Critically, Jones has once more provided no proof that Detective Dean's alleged omission was made in deliberate or reckless disregard of the truth.

Because Jones has not made the requisite "substantial preliminary showing" under *Franks v. Delaware*, the Court recommends denying his request as to each of the statements or omissions identified.

### C. The *Leon* Good Faith Exception

The United States argues that even if the Court did not find probable cause existed for the search warrants, the evidence was properly admitted pursuant to *Leon*'s good-faith-reliance exception to the exclusionary rule. In *United States v. Leon*, the Supreme Court stated that evidence generally will not be excluded when officers reasonably rely on a facially valid search warrant. 468 U.S. 897 (1984). The inquiry is "whether a reasonably trained police officer would have known that the search was illegal despite the [issuing judge's] authorization." *Id.* at 923, n. 23. The good-faith exception is inapposite in four instances:

> (1) when the warrant is issued on the basis of an affidavit that the affiant knows (or is reckless in not knowing) contains false information; (2) when the issuing magistrate abandons his neutral and detached role and serves as a rubber stamp for police activities; (3) when the affidavit is so lacking in indicia of probable cause that a belief in its existence is objectively unreasonable; and (4) when the warrant is so facially deficient that it cannot be reasonably presumed to be valid.

*United States v. Thomas*, 605 F.3d 300, 311 (6th Cir. 2010). Jones mentions in passing that *Leon* does not apply to validate the unlawful search warrants based on exceptions (1) and (3) above. (DN 39, at PageID # 207-08). He states that no reasonably well-trained officer could have relied upon the warrants in good faith because the affidavits were lacking in probable cause and contained

materially false statements and omissions. (*Id.*).

Based on the above analysis on probable cause and whether Jones was entitled to a *Franks* hearing, the Court cannot say that the affidavit was so lacking that the issuing judge's approval was objectively unreasonable. Even if the Court had found the warrants lacking in probable cause, the *Leon* good-faith exception would have applied based on the officers' reliance on the facially valid search warrants.

## V. Recommendation

For the foregoing reasons, the Court **RECOMMENDS** that Defendant Salvador Jones' Motions to Suppress (DN 37; DN 38; DN 39; DN 40) be **DENIED** and that his Request for a *Franks* Hearing (DN 39) be **DENIED.**

Regina S. Edwards, Magistrate Judge
United States District Court

May 24, 2022

## NOTICE

Therefore, under the provisions of 28 U.S.C. Sections 636(b)(1)(B) and (C) and Fed.R.Crim.P. 59(b)(2), the Magistrate Judge files these findings and recommendations with the Court and a copy shall forthwith be electronically transmitted or mailed to all parties. Within fourteen (14) days after being served with a copy, any party may serve and file written objections to such findings and recommendations as provided by the Court. Fed.R.Civ.P. 59(b)(2). If a party has objections, such objections must be timely filed or further appeal is waived. *Thomas v. Arn*, 474 U.S. 140, 150-51, 106 S. Ct. 466, 88 L.Ed.2d 435 (1985).

Copies:     Counsel of Record