UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

UNITED STATES OF AMERICA

v.                                                                                              3:21-cr-89-BJB

SALVADOR ABDUL JONES

## MEMORANDUM OPINION & ORDER

Salvador Abdul Jones is charged with committing five bank robberies in the Louisville area. He has moved to suppress evidence obtained as a result of three sets of warrants: (1) the pen-register, trap-and-trace, and phone warrants because they misidentified the crime as "heroin trafficking," (2) the search warrant for his residence because it was dated for the day after the search, and (3) the warrants for the phones because they lacked probable cause, particularity, and were based on false statements and misleading omissions that justify a *Franks* hearing. He also moved to exclude (4) evidence derived from the marital communications Jones's wife, Nikira Gibbs, provided officers. Magistrate Judge Edwards recommended denying all of the motions. Jones timely objected to the Report and Recommendation, but did so without specifying the legal authorities that in his view required suppression. After being ordered to refile, Jones focused his objections on the reference to heroin trafficking and Gibbs's marital communications. After conducting a de novo review, the Court agrees with Magistrate Judge Edwards, overrules Jones's objections, and denies all of his motions.

### I.   Background

As the Magistrate Judge explained without objection, the facts underlying this motion are drawn largely from the affidavits filed to support the warrants in question. Report and Recommendation (DN 42) 1–3; DN 43 at 1 (accepting the basic facts). Over the course of about a month, six bank robberies occurred in Louisville and Southern Indiana. After the first robbery on April 2, 2021, officers collected security footage showing a suspect getting in a black SUV near the Brown Hotel. Search Warrant Affidavit (DN 35-1) at 4. After the second and third robberies, officers concluded that the same suspect was involved based on victim descriptions and videos showing the suspect wearing "some of the same clothing." *Id.* After the fourth robbery, the police found a black SUV, a 2009–2015 Toyota Venza, with the same description as the vehicle from the first robbery. *Id.* at 5. A robbery the next day followed the same description. *Id.* But the suspect remained at large.

On May 5, yet another similar robbery was reported. *Id.* at 5. The officers put out a notice to look for a black Toyota Venza. *Id.* Some officers in the neighborhood

1

spotted a vehicle matching the description, reported the license plate number, and began tailing the vehicle. *Id.* A search of the license plate revealed the vehicle belonged to Nikira Gibbs. *Id.* The officers tailing the vehicle lost it, so the other officers used their newly obtained information to visit Gibbs's residence. *Id.* Once they arrived, the officers saw Gibbs pacing in front of her residence. *Id.* She informed them that she was trying to report her vehicle as stolen. *Id.* Officers asked her to come with them for an interview because her vehicle was just used in a crime. *Id.* During the interview, she told officers that she had married Salvador Abdul Jones the day before, May 4. *Id.* Officers began looking into Jones and found that his characteristics matched the descriptions from the six robberies. *Id.* Gibbs told officers she would often drop Jones off at different locations around the city and later pick him up, including the Brown Hotel about a month prior. *Id.* Gibbs also said that earlier that day Jones called her and said he was being chased by the police and totaled the car and asked her to call and report it stolen. *Id.* Officers showed her photographs from several of the robberies with the suspect and Gibbs identified the suspect as Jones. *Id.* Gibbs then provided two numbers for Jones, *3671 and *6250. *Id.* The 3671 number was registered to Jones with Verizon. *Id.*

Based on this information, LMPD Detective Benjamin Dean sought pen-register, trap-and-trace, and search warrants for "subscriber records, transactional records, and related content." DN 35-1; DN 35-2. Jefferson County Circuit Court Judge McKay Chauvin signed the warrants on May 5. *Id.* Judge Chauvin also signed a search warrant for Jones's residence; although he dated the house warrant as May 6, it was actually executed the same day, May 5. DN 35-5.

On the 6th, officers learned the 3671 number was switched to T-Mobile/Metro PCS. So Detective Dean requested and received another pen register. DN 35-3. These warrants stated the investigation was for heroin trafficking, though the accompanying affidavits described the robberies. Around the same time, the officers received pings from the 6250 Sprint number around Nashville. Nashville police obtained their own warrant for the Sprint number's location, and then found and arrested Jones. Detective Dean traveled to Nashville and interviewed Jones, who confessed to four of the robberies. DN 35-6 at 4. Afterwards, Detective Dean also applied for a search warrant for the electronic data on two phones collected from Jones. *Id.*

Based on the gathered evidence, a federal grand jury indicted Jones on five counts of bank robbery for the robberies occurring in the Western District of Kentucky. DN 1; 18 U.S.C. § 2113(a). Jones filed four motions to suppress, targeting evidence obtained from: (1) the pen-register and trap-and-trace device warrants because they misidentified the crime as "heroin trafficking," Motion to Suppress Pen Registers (DN 37) at 3; (2) the search warrant for his residence because it was dated for the day after the search, Motion to Suppress Residence Evidence (DN 38); (3) the warrants for the phones because they lacked probable cause, particularity, and were based on false statements and misleading omissions that justify a *Franks* hearing,

2

Motion for *Franks* Hearing and to Suppress Phones (DN 39) at 1; and, (4) any evidence derived from the marital communications Gibbs provided officers, Motion to Suppress Marital Communications (DN 40) at 1.

This Court referred the motions to Magistrate Judge Edwards under 28 U.S.C. § 636(b)(1)(B) to conduct any hearings and prepare a report and recommendation. DN 41. Magistrate Judge Edwards recommended denying all of the motions. R&R at 1. She recommended denying the motion to suppress the warrant for Jones's residence because the signature date was a technical error that made no difference. *Id.* at 4. As to the marital communications, she explained that the privilege only applies to in-court testimony, not statements made to aid an investigation. *Id.* at 6. For the pen registers and phone searches, Magistrate Judge Edwards found that misidentifying the crime was a mere mistake and there was sufficient evidence for probable cause. *Id.* at 7–12. She also noted that the good-faith exception would apply in any event. *Id.* at 16–17. And a *Franks* hearing was unwarranted because Jones didn't prove any of the statements were deliberately false or made with reckless disregard for the truth, much less that any omissions were made with deliberate or reckless disregard for the truth. *Id.* at 12–16.

Jones initially filed objections broadly incorporating all of his previous motions and challenging each finding with minimal legal citations. 1st Objections (DN 43). The Court ordered Jones to refile his objections with references to law and ordered the Government to respond. DN 45. Jones narrowed his objections, arguing that the reference to heroin trafficking in the warrants had a significant impact on the probable-cause analysis and that any evidence derived from Gibbs's disclosure of marital communications should be suppressed. 2nd Objections (DN 46).

## II. Analysis

A district court may refer a motion to suppress to a magistrate judge to conduct a hearing and submit a report and recommendation suggesting potential resolutions. 28 U.S.C. § 636(b)(1)(B); Fed. R. Crim. P. 59(b)(1). If a party objects to any of the magistrate judge's rulings, the district court must "make a de novo determination of those portions of the report or specific proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1)(C); Fed. R. Crim. P. 59(b)(3). But the court needn't address issues not specifically objected to by either party and may simply adopt the magistrate judge's recommendations. *Thomas v. Arn*, 474 U.S. 140, 150–53 (1985). If no party objects to a particular finding, any objection is forfeited. *Carter v. Mitchell*, 829 F.3d 455, 472 (6th Cir. 2016). But the district court is always free to conduct its own de novo review and reject or modify any part of the magistrate judge's report. *See Thomas*, 474 U.S. at 150; *Boerste v. Ellis, LLC*, No. 3:17-cv-298, 2021 WL 5449003, at *4 (W.D. Ky. Nov. 22, 2021).

### A. Marital communications

Jones seeks to bar the use at trial of any communications between him and his wife, as well as any derivative evidence under the marital-communications privilege. Marital Communications Motion at 1. Gibbs and Jones say they married on May 4. *Id.* The next day, police interrogated Gibbs about her allegedly stolen vehicle, believing Jones used it to commit a robbery. *Id.* Gibbs told the officers that Jones called her and said "that the police was behind him and to report the car stolen." *Id.* Jones wishes to suppress this statement as a marital communication and suppress any evidence obtained as a result of the statement. The Government responded that while it wouldn't elicit the statement at trial, it was free to use the statement for investigatory purposes, such that any resulting evidence shouldn't be suppressed on that basis. Response to Marital Communications Motion (DN 32) at 1. Magistrate Judge Edwards agreed with the Government. R&R at 5–6. Jones objected to this ruling, arguing that it undermines the purpose of the privilege in creating a safe haven for spouses to speak freely. 2nd Objections at 2 (citing *United States v. Porter*, 986 F.2d 1014, 1018 (6th Cir. 1993)). Unfortunately for Jones, the broader policy principles he invokes, while relevant to the justifications for the privilege, don't reflect the current state of the caselaw.

The common-law privilege of confidential marital communications "exists to [e]nsure that spouses generally, prior to any involvement in criminal activity or a trial, feel free to communicate their deepest feelings to each other without fear of eventual exposure in a court of law." *Porter*, 986 F.2d at 1018 (quotation omitted). The person seeking to invoke the privilege must meet three prerequisites: "(1) At the time of the communication there must have been a marriage recognized as valid by state law; (2) the privilege applies only to utterances or expressions intended by one spouse to convey a message to the other; and (3) the communication must be made in confidence." *Id.* (quotation omitted).

This common-law privilege, "as interpreted by the United States courts in the light of reason and experience," was incorporated into the federal rules of evidence. FED. R. EVID. 501. Because the federal rule incorporates common-law principles, the application of the privilege has evolved over time. *Trammel v. United States*, 445 U.S. 40, 47 (1980). Courts have recognized several exceptions to the privilege, declining to shield communications regarding joint criminal activity, child abuse, and spousal abuse, for example. *United States v. Underwood*, 859 F.3d 386, 390–91 (6th Cir. 2017) (gathering cases). One longstanding aspect of the privilege is that it "only protect[s] against the disclosure of marital confidences in *testimony, not cooperation* with law enforcement officials." *United States v. Giavasis*, 805 F.2d 1037 (Table), 1986 WL 18086, at *3 (6th Cir. 1986) (per curiam) (emphasis added) (evidence obtained using marital communication offered to police was admissible because the statements were not elicited "in the courtroom"). "[T]he privilege rules do not prevent [a spouse's] disclosure of information to the police." *Id.* Indeed, numerous courts have ruled that "the government may use confidential marital communications to

4

investigate crimes, particularly when one spouse has volunteered the information." *United States v. Richter*, No. 1:21-cr-355, 2021 WL 6197899, at *4 n.5 (N.D. Ohio Dec. 30, 2021) (quotations omitted).[1]

Under the common-law privilege, therefore, Jones can't suppress evidence derived from his wife's comments to the police. She didn't disclose the relevant statements in court.[2] Instead, she voluntarily disclosed them as part of the police investigation. *See Giavasis*, 1986 WL 18086, at *3. And the police are free to use those statements in order "to support the issuance of a search warrant." *United States v. Lefkowitz*, 618 F.2d 1313, 1318 (9th Cir. 1980). So while Jones may be able to exclude the marital communications at trial, the Court may not suppress the evidence obtained during the investigation that may have resulted from Gibbs's disclosure of those statements. As a result, Magistrate Judge Edwards was correct to deny Jones's Motion to Suppress Marital Communications (DN 40).

### B. Phone-related warrants

Jones also moved to suppress the trap-and-trace, pen-register, and other phone-related warrants because the affidavits incorrectly identified the crime as "heroin trafficking." Motion to Suppress Pen Registers at 3; 2nd Objections at 1. According to Jones, cell phones are often "tools of the trade" for drug conspiracies, so any reference to heroin trafficking made it easier to justify searching his phones. 2nd Objections at 1 (citing *United States v. Gilbert*, 952 F.3d 759, 761 (6th Cir. 2020)). Without that mistake, Jones argues, the police would've lacked probable cause to target his phones given the lack of evidence he had a co-conspirator or that his phones were otherwise relevant to his alleged crimes. *Id.* at 2. Magistrate Judge Edwards recommended denying the motion because suppression is not a remedy for violations

---

[1] *See also United States v. Carlson*, 946 F. Supp. 2d 1115, 1129 (D. Or. 2013) ("state courts have refused to suppress evidence obtained as a result of one spouse's disclosure of confidential marital communications to the police.") (quotation omitted); *United States v. Irons*, 646 F. Supp. 2d 927, 957 (E.D. Tenn. 2009) ("[T]he marital communications privilege does not exclude other evidence obtained as a result of one spouse's disclosure of confidential marital communications to the police."); *United States v. Alexio*, 2015 WL 6181752, at *2 (D. Haw. Oct. 21, 2015) (same).

[2] The Government agrees that it cannot elicit these statements at trial. Response to Marital Communications Motion at 1. But that wouldn't necessarily preclude it from eliciting earlier statements that preceded the marriage date of May 4th, which might include statements by Jones about the rest of the robberies. The "adverse testimony privilege," however, may bar her testimony completely unless it is voluntary. *Porter*, 986 F.2d at 1018. In any event, these are issues that would potentially call for limitation of Gibbs's trial testimony, not for suppression of evidence derived from Gibbs's out-of-court statements to law enforcement.

of the pen-register statute, probable cause supported the warrants, and the mistake wasn't prejudicial. R&R at 7–12. This is correct.

To begin, the record indicates that the reference to "heroin trafficking" was simply a typographical error. In the case of a discrepancy between the affidavit and warrant, courts ask whether any prejudice could arise from the error and examine "any explanation tendered for it except typographical error." *United States v. Plunk*, 456 F.2d 1027, 1028 (6th Cir.1972); *United States v. Sawyers*, 127 F. App'x 174, 181 (6th Cir. 2005). Like the ordinary probable-cause inquiry, this analysis requires "commonsense." *Id.* (quoting *United States v. Ventresca*, 380 U.S. 102, 108 (1965)). Although the affidavits for the pen registers referred to "heroin trafficking," all the facts set forth in those affidavits discussed the six bank robberies; none mentioned heroin at all. DN 35-1 at 4–7; DN 35-2 at 4–7; DN 35-3 at 4–7. None of the actual warrants based off those affidavits said anything about heroin. DN 35-1 at 10–13; DN 35-2 at 10–13; DN 35-3 at 10–13. Similarly, the affidavit and warrant to search Jones's phones didn't mention heroin trafficking but relayed many of the same robbery-related facts included in the other affidavits. DN 35-6 at 2–6.[3] Finally, Detective Dean filed a report explaining that the reference to drugs was a mistaken carryover from a previous warrant he had obtained. DN 35-4.

So the only reasonable explanation for the reference to heroin is a typographical error that is only relevant if it was prejudicial. *See Sawyers*, 127 F. App'x at 181 (only explanation was typographical error that didn't spoil probable cause); *United States v. Griffin*, 2:17-cr-20639, 2022 WL 2072042, at *10 (E.D. Mich. Jun. 8, 2022) (finding typos regarding the wrong offense within a boilerplate affidavit section didn't justify suppression).[4] Prejudice, in turn, largely turns on whether

---

[3] Originally, Jones seemed to challenge the trap-and-trace, pen-register, and related search warrants for his phones. Motion to Suppress Pen Registers at 3. As Magistrate Judge Edwards points out, the trap-and-trace statute doesn't require the specific offense to be listed. R&R at 8 (citing 18 U.S.C. § 3122(b)(1)–(2)). And suppression isn't a remedy for issues with the warrants for pen registers or trap-and-trace devices. *See United States v. Wallace*, 885 F.3d 806, 809 (5th Cir. 2018); *United States v. Powell*, 847 F.3d 760, 771 (6th Cir. 2017) ("Nor does the pen-register/trap-and-trace statute itself provide for the suppression of evidence as a remedy for its violation."). It is also hard to see how a mention of heroin in the earlier affidavits could affect the probable-cause finding for the search warrant issued on May 10th, which was based on a different affidavit with no mention of heroin. DN 35-6 at 6. So Jones's arguments really just target the search warrants for "subscriber records, transactional records, and related content" that were combined with the pen-register and trap-and-trace warrants. DN 35-1; DN 35-2.

[4] Similarly, Jones moved to suppress evidence obtained from the search of his home because the judge dated the warrant as May 6th, when the search actually occurred on the 5th. Motion to Suppress Residence Evidence at 1. Magistrate Judge Edwards recommended denying the motion because a judge's minor dating error couldn't render the warrant invalid. R&R 3–4. Although Jones initially objected to this finding, 1st Objections at 2, he dropped it in his refiled objections. So this objection is forfeited. *Carter*, 829 F.3d at 472. Even so,

6

sufficient probable cause would've supported searching the phones if the mistake hadn't happened; in other words, if the warrant mentioned the correct crime rather than heroin trafficking. *See United States v. Winn*, 79 F. Supp. 3d 904, 917 (S.D. Ill. 2015) (error in listed offense not prejudicial because probable cause existed regardless).

Probable cause turns on a "totality-of-the-circumstances analysis" and requires "a practical, common-sense decision whether ... there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238 (1983). "This requires 'a nexus between the place to be searched and the evidence sought.'" *United States v. McPherson*, 469 F.3d 518, 524 (6th Cir. 2006) (quoting *United States v. Carpenter*, 360 F.3d 591, 594 (6th Cir. 2004)). Courts are "entitled to draw reasonable inferences about where evidence is likely to be kept, based on the nature of the crime and type of offense." *United States v. Williams*, 544 F.3d 683, 686 (6th Cir. 2008) (quoting *United States v. Bethal*, 245 Fed. App'x 460, 465 (6th Cir. 2007)).

Detective Dean's affidavits laid out sufficient facts to support probable cause. The affidavits explain the entire investigation of all six robberies. DN 35-1; DN 35-2; DN 35-3. Specifically with regard to Jones's phones, the affidavits say video surveillance from near the first robbery captured Jones pacing for about 15 minutes before a black SUV picked him up at the Brown Hotel. *See, e.g.,* DN 35-1 at 4. That same SUV was seen and identified in the fourth robbery as well. *Id.* at 5. When dealing with multiple crimes involving multiple people, it is reasonable to infer that a cell phone was used to coordinate. *See United States v. Olaya*, No. 15-cr-20200, 2017 WL 1967500, at *6 (E.D. Mich. Apr. 19, 2017) (reasonable to infer that suspects in home-invasion spree used phone found in a getaway car to coordinate their crimes). Similarly, it is reasonable to infer that Jones used a cellphone to contact the SUV's driver to drop him off and pick him up for the robbery.

But wait, there's more! After the sixth robbery, the police located the black SUV in the area and traced its license plate back to Nikira Gibbs. DN 35-1 at 5. When officers arrived at Gibbs's residence, she was pacing and said she was trying to report her SUV as stolen. *Id.* During Gibbs's interview with police, she stated "she would often times drop [Jones] off at different locations around the city and also pick

---

Magistrate Judge Edwards correctly noted that such mistakes in dates, especially by a judge, aren't grounds for suppression. *See United States v. Smith*, 720 F.3d 1017, 1020 (8th Cir. 2013) (wrong date was a technical error). It is not even apparent that there was an error at all, because some versions of the warrant include the correct date, and because Jones offers no evidence that the warrant was carried out too soon. *See* DN 33-2 at 8 (warrant filed with clerks). But even assuming error, other warrants sought on the same day with the correct date indicate a harmless mistake. *See* DNs 35-1 at 12; 35-2 at 12 (phone warrants signed on May 5th). And Jones offers no evidence that the warrant was actually executed before it was signed. So any objection on this basis is overruled and the motion is denied.

7

him up," including at the Brown Hotel on the date of the first robbery. *Id.* Again, it is reasonable to infer that Jones used a cellphone to coordinate these drop-offs and pick-ups. *See Olaya*, 2017 WL 1967500, at *6. So his phone would likely contain communications tying him to the robberies' times and locations. This would be sufficient. But Gibbs offered still more. She also said that earlier on the day of the sixth robbery, Jones called her and said "he was being chased by the police and totaled the car and informed her to call and report it stolen." *Id.* She *did* report the car as stolen, indicating a degree of cooperation and coordination. *Id.* She also identified Jones from surveillance around the various robberies and provided two numbers for Jones. *Id.* Jones's use of a phone to contact his wife about the crime and request aid obviously indicates evidence of the crime could be located on his phones and phone records.

It is true that cellphones are often a tool of the drug trade, so mentioning heroin trafficking might conceivably help secure a warrant for a phone. *See Gilbert*, 952 F.3d at 761. But that doesn't mean phones are irrelevant for other crimes. *See United States v. Matthews*, No. 1:19-cr-221, 2020 WL 1539941, at *6 (N.D. Ga. Feb. 21, 2020) (probable cause to search cell phones connected to robbery) (report and recommendation adopted sub nom). The Eighth Circuit concluded that probable cause supported a cellular-location warrant in a robbery investigation because "[c]ell phones are common and, even if there was no direct evidence that the robber had one, criminals will," according to the training and experience of the investigator in that case, "use them to contact co-conspirators during or after committing a crime." *United States v. James*, 3 F.4th 1102, 1105 (8th Cir. 2021). Here, Detective Dean says he has years of training and experience with robberies, knew that robbers often change phones to avoid detection, and believed that a pen register was the only way to track Jones. DN 35-1 at 5–6; *see generally United States v. Schultz*, 14 F.3d 1093, 1097 (6th Cir. 1994) ("[A]n officer's 'training and experience' may be considered in determining probable cause."). That experience is especially strong here, given that the current record shows Jones used his phone to contact his ride at least once, communicated about his alleged crimes, and apparently directed his wife to aid in a cover up. Together that is more than sufficient to show that evidence of a crime was likely to be found on his phones.[5]

---

[5] Initially, Jones also asked for a *Franks* hearing based on several allegedly false statements and omissions in the affidavits for the pen-register, trap-and-trace, and phone warrants. Motion for a *Franks* Hearing at 1. Jones says the reference to heroin trafficking was false and one of the phone numbers wasn't registered to him. *Id.* at 4–6. He also says the affidavit omitted the time of the robbery, Gibbs's statement that one of the photos didn't look like Jones, and her statement that she didn't pick up Jones after the first robbery. *Id.* Magistrate Judge Edwards found no evidence that the statements were deliberately false or reckless. R&R 13–15. So Jones also couldn't meet the higher standard for omissions: "a substantial preliminary showing that the affiant engaged in deliberate falsehood or reckless disregard for the truth in omitting information from the affidavit." *United States v. Fowler*, 535 F.3d 408, 415 (6th Cir. 2008). *Id.* Much like the search warrant for his home, Jones

In any event, the good-faith exception would preclude suppression. Courts shouldn't suppress "evidence obtained in objectively reasonable reliance on a subsequently invalidated search warrant." *United States v. Leon*, 468 U.S. 897, 922 (1984). But, as Jones notes, this exception doesn't apply "(1) when the warrant is issued on the basis of an affidavit that the affiant knows (or is reckless in not knowing) contains false information … [or] (3) when the affidavit is so lacking in indicia of probable cause that a belief in its existence is objectively unreasonable." *United States v. Thomas*, 605 F.3d 300, 311 (6th Cir. 2010); Motion for *Franks* Hearing at 6. The exception *does* apply, however, when the affidavit contains a "minimally sufficient nexus between the illegal activity and the place to be searched," even if the information is ultimately insufficient for probable cause. *United States v. Carpenter*, 360 F.3d 591, 596 (6th Cir. 2004). Even assuming this affidavit fell short, it was not "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." *Id.* at 595 (quotation omitted). An officer could reasonably believe that Jones being picked up in his future wife's SUV after the first robbery, coupled with his call to her after the sixth robbery, would suffice for probable cause. *See Olaya*, 2017 WL 1967500, at *7 (similar evidence in a robbery case was sufficient for good faith). As a result, Magistrate Judge Edwards was correct to deny Jones's Motion to Suppress the Pen Registers (DN 37) and Motion for a *Franks* Hearing (DN 39).

### III. Conclusion

The Court overrules Jones's Objections (DN 43, DN 46), adopts Magistrate Judge Edwards's excellent Report and Recommendation (DN 42), denies Jones's Motions to Suppress Pen Registers (DN 37), Residence Evidence (DN 38), and Marital Communications (DN 40), and denies Jones's Motion for a *Franks* Hearing and to Suppress Phones (DN 39).

Benjamin Beaton, District Judge
United States District Court

August 12, 2022

---

initially objected to this finding but subsequently dropped that objection. 1st Objections at 5–6; *Carter*, 829 F.3d at 472. In any event, the Court agrees that Jones hasn't presented any evidence that any of the statements were deliberately false or reckless. *United States v. Atkin*, 107 F.3d 1213, 1216–17 (6th Cir. 1997); *Fowler*, 535 F.3d at 415. So Jones isn't entitled to a *Franks* hearing. *See United States v. Graham*, 275 F.3d 490, 506 (6th Cir. 2001).

9